I'll call the case CitiMortgage v. Corte Madera Homeowners Association. We've set it for ten minutes aside. When you're ready, counsel, we look forward to your argument. May it please the Court, I'm Stephen Parsley here on behalf of Appellate CitiMortgage. I'd like to reserve two minutes for rebuttal. Okay. So this is a case about a deed of trust holder's state law-acquired title claim that was premised on the HOA's violation of the automatic bankruptcy stay during the foreclosure of its lien. And not only is the summary judgment below due to be vacated under Bank of New York Mellon v. Enchantment at Sunset Bay, which came out on June 25th, but the bankruptcy docket and the record below leave no question that the sale must be set aside and that this Court should enter an order stating that. And this Court held in the first appeal that the automatic stay violation needed to be adjudicated by the district court. But the district court reached only a determination on standing and held that Citi didn't have standing to raise a quiet title claim premised on the bankruptcy stay violation. But that rationale was rejected in the Enchantment decision, and there this Court held that Nevada law permitted a quiet title action from a deed of trust holder that was premised on the violation of bankruptcy stay. And so I'd submit that that controls here perfectly, Your Honor. There's no question as to this pure issue of law. That issue of standing is totally resolved. And so now what remains is for this Court to consider whether it can hold that the foreclosure, in fact, was void and so the deed of trust necessarily survived. And here the answer is yes, even though the sale was held after the bankruptcy case closed, both the notice of delinquency and the notice of default were served and recorded while the property was still property of the estate. By only six days, it was pretty close. It was pretty close, but, you know, close doesn't count in horseshoes and hand grenades, as you've heard, Your Honor. But the notice of delinquency was served well in advance of the closing of the estate. And Nevada requires that all three of the statutory notices be valid, the notice of delinquency, notice of default, and the notice of sale. If any of the three was recorded when the stay was in effect, the foreclosure was ineffective. It's null and void. And multiple Nevada Supreme Court cases have gone through different iterations of these three notices being recorded while the stay was in effect. And in each case, if one was recorded while the stay was in effect, the whole sale needs to be set aside. Is there some reason we should decide this rather than sending it back for the district court to decide in the first instance? Yes, Your Honor. So for the purpose of judicial resources, so this case has been ongoing for over five and a half years. It's already gone through one appeal. As Mr. Johnson mentioned, citing the Satakoi Bay Milliken case, this court has recognized that the economic incentives favor purchasers to continue the litigation and draw it out. Foreclosing on the deed of trust is less viable while there's ongoing litigation. But renting out the property is just as viable. I don't mean to distract you unduly, but it strikes me as a slim odd that if it turns out that the sale was wrong, why does that entitle the person who has held the property for years and years, under what I'm now positing as a wrongful sale, why do they get to keep all the proceeds? I think there would be a case for us to go after them, Your Honor, but that's expensive, that there's always a question of whether those funds have already been spent and are no longer available and some action to collect. Yeah, and I realize that's not in front of us right now. Yes, Your Honor. So finally, I would note that the appellees said in their answering brief on page 27 that any question about what occurred in the bankruptcy can be reviewed sua sponte by the court taking judicial notice of those proceedings. So there shouldn't be any argument that there's a question of fact here. The appellees have already conceded that taking judicial notice and for this court to look through the bankruptcy proceedings would be entirely appropriate. And I would submit that the bankruptcy docket, along with the record on appeal, is all the information that's needed to reach the determination that the sale was void. So all that's left for this court is just pure legal issues, and those pure legal issues are controlled by the enchantment decision, Your Honors. So for these reasons, the city asks this court to reverse the judgment below and remand with instructions to enter judgment confirming that the deed of trust is not extinguished by the foreclosure sale. Counsel, can I just ask one question about the enchantment decision? That appeared to be an issue of first impression in this circuit, and it has to do with the relationship of Nevada law and the bankruptcy law. I was just curious if you know of any circumstances in other circuits where a similar issue has come up. I've researched pretty extensively something like the HOA lien cases, and I didn't see anything that was quite on point. A lot of these cases that you'll come across are cases that come out of the bankruptcy courts, and in those situations we have the Conroes and the Globes sorts of cases where they're looking at the considerations of the bankruptcy trustees' control of the process, the bankruptcy court's powers and things like that, and those are all very distinguishable from a Nevada quiet title action between the current title owner and the deed of trust holder. Okay, let's hear from the other side, and you will have saved a lot of time.  My name is Garrett Chase, and I represent the appellees, Susan Patchen and the Eagle and the Cross LLC in this appeal. Your Honors, this appeal fundamentally presents the question of whether this court will reinforce the longstanding principles governing who is entitled to enforce the protections set forth in section 362A of the bankruptcy code, and specifically, appellees request that this court affirm the district court's decision granting summary judgment in their favor for three important reasons. First and foremost, the district court correctly concluded that appellant's city mortgage lacked the requisite standing to challenge the purported violation of the automatic stay, which as a threshold legal issue was dispositive of the party's claims. Second, while not necessary, if the court does view the merits of the dispute and of the question of whether or not the acts of the HOA violated the stay, there are legal sources that indicate that there was no violation of the automatic stay. And third and finally, the district court's entering summary judgment sui sponte was entirely proper and appropriate under the circumstances. How can we say that there's no standing given Bank of New York Mellon? So the Bank of New York Mellon versus Enchantment case, or as I call it, the Enchantment case, does sort of throw a wrench in the gears of this one because it obviously came out after the first round of briefing in this appeal and it does represent a marked departure from the Ninth Circuit's position on the issue of standing to raise 362A. However, there are some significant issues with the analysis presented in the Bank of New York Mellon versus Enchantment opinion. Hasn't the mandate issued in the case? I believe it has, Your Honor. Yeah, so we are bound by it. Not necessarily, and here's the distinction that I'll point to. If you look at the, while it is a binding decision, right, and it is a published opinion from this court recently on the issue of standing, even within the decision itself, it acknowledges problems with contradictions to longstanding principles that are in binding precedent. So, for example, the case of In re Globe, which was obviously the 1989 decision that really set forth the clear position of the Ninth Circuit on who has standing to raise challenges under 362A, is not cited anywhere in the majority opinion in the Enchantment case. In the concurrence, the judge notes that that case, both In re Globe and actually In re Pecan Groves, are still binding precedent within this jurisdiction and have, since their issuance in 1989 and 1991, have been the position on standing to raise those issues of 362A violations. I think everybody agrees, or at least all the opinions in Enchantment seem to agree that there is some tension in our case law. But on the specific question of whether the bank has standing to raise this violation in the context of a quiet title action under Nevada law, whatever you think about how to resolve all those tensions, that specific question was answered in that case, wasn't it? How would we get around that? It was, Your Honor, and tension is a great word to describe the Enchantment case with other decisions. And to resolve the tension, there are, again, there's a couple of issues, and these are noted by the dissent in the Enchantment decision, which are, one, when we're dealing with an issue of federal statute enforcement, which is what we're dealing with here and what it seems like the Enchantment court was dealing with in that decision, the court should be looking to sources of binding precedent from within the circuit, so within the Ninth Circuit. As noted by the dissent, the court in Enchantment looked almost exclusively to Nevada State Supreme Courts, and primarily the, I think it was Paradise Point was the Nevada Supreme Court decision that was cited extensively. And the problem with that is, in applying that to this case here, the previous decision from this court on appeal in this instance resolved virtually all of the issues except for the issue of whether or not the bank has standing to enforce the bankruptcy code protections, and what, if any, those protections have on the claims in this case. And so, again, to resolve some of that tension, if we look to the longstanding principles, for example, in Wray Globe, we see a factually similar decision that confirms that creditors acting as interested property owners do not have standing. Are you saying that there's some, is there some factual difference between what happened here and what happened in Enchantment? In, for what happened here, not necessarily, I mean, not particularly. The facts between Enchantment and between this case are fairly close. The thing is, Enchantment is wrong. Essentially. That's the quick version, Your Honor. I think that's an argument better directed to the en banc court. Well, and here's the, it's not necessarily that Enchantment is wrong. Enchantment sought to distinguish itself from cases like In Re Pecan Groves by pointing to the procedural background of that case. So in the majority opinion, the court in Enchantment goes on and says, this is different than Pecan Groves because that case was talking about standing to raise an appeal as to whether or not the protections under 362A can be raised by, you know, by a creditor. And that is probably accurate. Honestly, like I said, it's not that the entire decision is wrong. It's that that decision ignores longstanding binding precedent that has been widely acknowledged as the proper interpretation of 362A. And so it's not necessarily that Enchantment is absolutely wrong, but this court's faced with an issue where we have binding precedent on the, say, sort of both things, right? So prior to, yeah. You can use your remaining time how you want, but I would suggest that maybe it would be more helpful to you to focus on why we shouldn't accept the suggestion from your friend on the other side to say that there was in fact a violation of the automatic stay here. Absolutely, Your Honor. So first, and we mentioned this in the briefing, but because the court, the district court did not reach the issue of whether or not this was, this conduct was a violation of the automatic stay, this court as it's done in the past should refrain from reaching that issue. If the court is inclined to go that far, we would argue that based on the record before this court, there isn't a strong enough indication that what the HOA did constituted a violation of 362A and specifically looking at the timeline. So the order discharging Ms. Horton in the bankruptcy was issued on May 30th, 2012, and that's in the record at page 15. And as, as Your Honor's noted earlier, the notice of delinquent assessment lien and the notice of default occurred prior to the final decree, which was issued on October 17th, 2013. So the question is whether those based on the record before this court constituted a violation of the automatic stay. I would argue that based on, on the record, there is still some question. And this question was acknowledged in the court's previous decision in this instance as to whether or not the property was property of the debtor or property of the estate. If it's property of the debtor, it's an open and shut question because obviously those things happen after the discharge was entered. If it's property of the estate, it's more complex, but still the, the court should conclude that there was no violation of the state because essentially the notice of delinquent assessment lien and the notice of default election to sell don't well, they operate within the exceptions to the automatic stay set forth in section three 62 B. And then of course in section five 46. So basically what we, you know, I said forth in, in the briefing, because the HOA's lien is perfected at the time of recording of the CCNRs, which indisputably happened pre petition. And because the actual enforcement of that lien with the notice of the trustees sale and the actual auction didn't occur until after the final decree, the question is whether or not the notice of delinquent assessment lien and the notice of default actually constitute, you know, perfection of the lien or continuing perfection because the lien was already perfected. There is, like I said, there's, there's indications out there within the ninth circuit and other circuits that those notices operate as ministerial maintenance or ongoing perfection of that lien. And specifically I'm pointing to, right. So like I said, section five 46 of the bankruptcy code, which has been confirmed to include things like state law creates the exception for those types of ministerial or maintenance actions with regard to, to statutorily prioritized liens. And so in this case, we would argue that the notice of delinquent assessment and the notice of nonjudicial foreclosure. Right. And, and they didn't, in this case, the HOA waited until after the final decree before noticing the foreclosure sale and then proceeding with foreclosure. And so for that reason, we believe that no automatic say violation. You say they don't trigger it, but they're obviously a necessary first step. Is that correct? Absolutely. Your honor. And, and again, this is where we kind of work into that exception under three 62 B and five 46 B one a and B, which is for ministerial and maintenance of already perfected lanes. And so, again, we would say that that does not constitute a violation of the stay that the Sue upon Sue Esponte summary judgment grant was appropriate and request that the court affirmed that decision. All right. Thank you. Your honors. Okay. Thank you. Mr. Parsley. Your honors. The prior panel rule really controls the legal question of standing. It's not just procedural difference here. There's a cause of action difference that sets this case apart from the Congress and globe. So moving on to the question again, of whether you can reach a decision on the merits of the case. So tell, tell us, tell us why in your view the notice of default and intention to sell isn't, isn't a violation of the automatic stay. Yes, because section three 62 bars it, it bars an act to enforce the lien as well as an act to create the lien. So there's, because it's a split lien system in Nevada, it's a little ambiguous about what is an act to create the lien. And in some ways there's a lien that goes back all the way to the time of the CC and ours being recorded. But as far as the super priority lien, which is what could wipe out the deed of trust that is necessarily enforced by these three notices, the notice of delinquency default sale. And two of those were clearly recorded while the stay was in effect while the property remained in the estate. And we can see that the property remained in the estate by looking at the date where the borrower or the debtor stated that she was surrendering the property to the bankruptcy state. And then in the trustees report October 17, 2013 he was stating that he was abandoning the property. Hence it had to have remained in the estate at that time. And there's nothing that can be found in the docket of the bankruptcy court that would indicate any earlier disposition of this property that would have taken it out of the estate at that point. So I think we've seen all that we need to do in order to reach that final answer there and sending it back to the district court for sort of pro forma order, which would probably then appeal and come back to this court in a year or so would be unnecessary and be a waste of judicial resources. You're lucky. Yeah. It might be a little longer. Could be. That's all I have to say, your honors, unless you have any further questions. Okay. I think no further questions. Thank both sides for your helpful arguments. City mortgage versus Corte Madera homeowners association submitted. And that concludes our arguments for this afternoon. Thanks very much. Thank you, your honors.
judges: SCHROEDER, FLETCHER, MILLER